## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| COREY MOORE,<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, GEORGIA and<br>DARIN SCHIERBAUM, individually,<br><br>          Defendants. | Civil Action File No.<br><br>1:20-cv-03380-JPB-JKL |

## DEFENDANTS' OBJECTIONS TO
## FINAL REPORT AND RECOMMENDATION

Defendants City of Atlanta (the "City") and Darin Schierbaum (collectively "Defendants"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b)(2)-(3), and Local Rule 72.1(B), respectfully object to the Final Report and Recommendation (Dkt. 82) (collectively ("R&R")) to the extent it recommends denying summary judgment on Plaintiff's retaliation claims. If left unchanged, the R&R would create new legal standards that would limit employers' ability to discipline their employees for misconduct.

## I.     STANDARD OF REVIEW

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's report and recommendation. *Williams v. Wainwright*, 681 F.2d

732, 732 (11th Cir. 1982) (per curiam). When a party objects to a magistrate judge's report and recommendation, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting this review, the Court "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Indeed, the Court's review powers are broad, including discretion to consider an objecting party's legal argument not presented to the magistrate judge. *United States v. Franklin*, 694 F.3d 1, 6 n. 2 (11th Cir. 2012). Against this backdrop, Defendants respectfully request the Court consider their objections and correct the errors in the R&R before entering a final order on their summary judgment motion.

## II.   OBJECTIONS AND CITATIONS TO AUTHORITY

The R&R erred when recommending that "[s]ummary judgment should be **DENIED** as to Plaintiff's retaliation claims—against the City under Title VII and against Defendant Schierbaum under Section 1981—as they pertain to his suspension and demotion." (Dkt. 82 at 100.) As set forth below, Defendants object to the R&R's findings that (A) Plaintiff satisfied the causal connection element for a prima facie case of retaliation, and (B) a jury question exists on pretext.

2

**A.   The R&R erred in finding that Plaintiff could establish the causal connection element for a prima facie case of retaliation.**

**1.   Defendants object to the R&R misapplying the legal standard.**

While correctly noting the third element of a prima facie case for retaliation requires Plaintiff to show a causal connection between his protected activity and adverse action, (Dkt. 82 at 59), the R&R criticized Defendants for contending "Title VII retaliation claims must be proved according to the traditional principles of but-for causation," (*id.* at 74 (citations omitted)). In doing so, the R&R said that Defendants raised the but-for requirement "[f]or the first time on reply," (*id.*), and "provide[d] no authority in support of the new requirement[,]" (*id.* at 75). The R&R overlooks that Defendants raised but-for causation a dozen times in their summary judgment brief. (Dkt. 62-1 at 6, 23-24, 28-29, 34 (citing authorities in support of the but-for standard).) The R&R then questioned whether Defendants' authorities "now require[] that the Plaintiff prove—at summary judgment no less—'that his demotion would not have occurred but-for Schierbaum learning about Plaintiff's alleged discrimination claims.'" (Dkt. 82 at 74-76.) Defendants object to the R&R's position on but-for causation because it departs from applicable precedent.

Under Title VII, a plaintiff must "establish that his . . . protected activity was a but-for cause of the alleged [retaliatory] adverse action . . . ". *Smith v. City of Fort Pierce, Fla.,* 565 F. App'x 774, 778 (11th Cir. 2014) (quoting *Univ. of Texas Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); s*ee also Bostock v. Clayton Cnty., Ga.,* 140 S. Ct. 1731, 1739 (2020). Like Title VII retaliation claims, the Supreme Court in C*omcast v. National Association of African American-Owned Media* affirmed that but-for causation applies in Section 1981 claims. 140 S. Ct. 1009, 1014 (2020) (stating that "our precedent[s] persuade us that §1981 follows the general rule. Here, a plaintiff bears the burden of showing that race was a but-for cause of its injury.").

Contrary to the R&R's position that but-for causation is only "a problem for the factfinder at trial," (Dkt. 82 at 76-77), the Eleventh Circuit has integrated the but-for standard into the summary judgment analysis. *See, e.g., Fort Pierce,* 565 F. App'x at 779; *Butterworth v. Lab. Corp. of Am. Holdings*, 581 F. App'x 813, 817 (11th Cir. 2014). Courts in the Eleventh Circuit apply but-for causation at the prima facie and pretext stages. *See, e.g., Whitworth v. SunTrust Banks, Inc.*, No. 1:16-CV-325-ODE-CMS, 2018 WL 1634301, *13 (N.D. Ga. Apr. 3, 2018); *see also Diaz v. Fla.,* 219 F. Supp. 3d 1207, 1220-21 (S.D. Fla. 2016) (granting summary judgment when plaintiff "fail[ed] to show the requisite but-for causation necessary to establish a prima facie case of retaliation"). In Section 1981 cases, "while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant." *Comcast*, 140 S. Ct. at 1014-

15. These authorities clarify the R&R's question about applying but-for causation at the prima facie stage on summary judgment.

The R&R also criticizes Defendants for failing to tell "the Court [how it] should approach analyzing any evidence offered in support or opposition to the counterfactual hypothetical situation in which Defendant Schierbaum never learned about Plaintiff's complaints about discrimination." (Dkt. 82 at 75.) *Bostock,* cited by Defendants, sets forth the applicable consideration for this analysis, however. 140 S. Ct. at 1739 ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.").

Here, the Civil Service Board ("CSB") decisions address the R&R's counterfactual scenario. Because the CSB did not consider Plaintiff's protected activity when affirming his discipline, his protected activity does not change the discipline results, meaning his misconduct (not any protected activity) is the but-for cause of his suspension and demotion as *Bostock* directs. *See Whitworth*, 2018 WL 1634301, *11 (granting summary judgment on retaliation claims under Title VII and Section 1981 because a plaintiff "must show the adverse action would not have occurred but-for (i.e., without) the employer's desire, motivation, and intent to retaliate against the plaintiff"). Thus, the record lacks evidence of Plaintiff's protected activity being the but-for cause of his adverse actions and he cannot show

5

a prima facie case retaliation.

### 2. Defendants object to the R&R omitting material facts.

The R&R notes that Plaintiff admits to dropping the ball in the Georgia Tech kidnapping incident, (Dkt. 82 at 27), and that Plaintiff was transferred from Morning Watch to Evening Watch and removed from patrol to the Video Integration Center, (*id.* at 90), but overlooks that: (1) Plaintiff in fact knew an Office of Professional Standards ("OPS") investigation related to the Georgia Tech incident was requested as early as February 13, 2019, before he sent his February and March 2019 emails broadly discussing discrimination, (Dkt. 62-2 at ℙ 270); (2) OPS interviewed Plaintiff in April 2019, before he complained to OPS about discrimination later in April 2019, (Dkt. 62-2 at ℙ 226); and (3) Plaintiff received discipline for another instance of his misconduct before emailing in February and March and complaining in April 2019,[1] (Dkt. 62-2 at ℙ 107). The R&R overlooking these salient facts is material. These facts (notice of the forthcoming fifth OPS investigation and his prior discipline for other misconduct), coupled with other facts in the record (like Plaintiff admitting he dropped the ball and he was twice transferred before mentioning discrimination), demonstrate or, at least, strongly infer that Plaintiff complained

---

[1] These facts also provide context to Chief Shields' skepticism about Plaintiff's discrimination claims, which he abandoned here without providing any evidence.

about discrimination because he feared further discipline and wanted to influence the investigation process. When analyzing the entire record in the light most favorable to Plaintiff, but under the lens of but-for causation, a fair-minded jury could not credibly find a causal connection of retaliation between Plaintiff's April 2019 "discrimination" complaint and the October 2019 decisions to suspend him for the third (shooting) incident and demote him for the fifth (kidnapping) incident (or even a connection with the May 2019 disciplinary recommendations for that matter).

### 3. Defendants object to the R&R misconstruing pertinent legal issues on causal connection.

#### a. The R&R misconstrues a proper comparator analysis.

In a circumstantial evidence case like this one, Plaintiff must provide a comparator and "show" his "comparators are 'similarly situated in all relevant respects.'" *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019). The R&R acknowledges that "Plaintiff has not set forth evidence . . . of comparators that are 'similarly situated in all material respects.'" (Dkt. 82 at 90.)

Despite lacking a true comparator, the R&R relies on Plaintiff's interpretation of statistical evidence to find (at least in part) a causal connection exists. (Dkt. 82 at 90.) Even assuming the statistics are probative evidence given the *Lewis* holding, the R&R overlooks the substantial weaknesses in the statistical evidence and then accepts Plaintiff's self-serving interpretation of the relevant period by alternating

between the time it considers relevant when considering the statistics.[2] The R&R alternates between the time it considers relevant, noting repeatedly that Plaintiff was "the only non-probationary sergeant demoted since 1995," (*id.* at 71, 79, 89), to conclude Plaintiff's "statistics highlight how unusual it was that Defendants chose demotion as their corrective measure . . . ", (*id.* at 90). The R&R then focuses on discipline issued only by Chief Shields during her brief tenure to avoid analyzing Defendants' evidence of terminated sergeants (a more severe discipline) for violations of the same work rules as Plaintiff during the same broad 20-plus year period. (*Id.* at 51, 89-90.) If the R&R believes a 20-plus year window is relevant to determine if any other sergeant was demoted, the R&R should consider that same period when determining if sergeants were disciplined more severely. (Dkt. 81 at 9-10.) This analysis would show, consistent with Chief Shields' testimony, that the

---

[2] As Defendants noted in their briefs, the statistics do <u>not</u>: reflect a sergeant's complete disciplinary history, provide details about the underlying misconduct leading to discipline, or note whether the sergeant accepted responsibility for their misconduct. (*See* Dkt. 62-17.) The statistics only show individual disciplinary actions for <u>single</u> violations of responsibilities of a supervisor and unsatisfactory performance work rules, despite Plaintiff violating these same work rules on <u>four</u> occasions without ever accepting responsibility for his failures. (*Id.*; Dkt. 62-1 at 18; Dkt. 81 at 7, 9-10.) And Plaintiff's misconduct included serious missteps that caused concerns about risk to the City arising from Plaintiff's poor decisions. (Dkt. 62-1 at 17-18; Dkt. 81 at 11.) Because the statistics lack this pertinent comparable information about other sergeants, which is necessary to perform a true comparator analysis, Defendants object to the R&R's reliance on the deficient statistics.

City terminated sergeants for violating the same work rules (related to responsibilities of a supervisor and unsatisfactory performance) that Plaintiff violated on four separate occasions. (Dkt. 62-2 at ¶ 339.)

### b.   The R&R misconstrues *Cisero*'s impact here.

The R&R's belief that *Cisero* is distinguishable, (Dkt. 82 at 72), overlooks three important considerations. First, the R&R's analysis overlooks record evidence in finding that because "Defendants do not point to any intervening conduct . . . arising after Plaintiff's April 2019 OPS complaint (or indeed, after his February and March 2019 emails),[3] there is nothing that would negate the normal causal inferences [ ] created by very close temporal proximity between Plaintiff's April OPS complaint and Defendant Schierbaum's recommendation that he be suspended and demoted the following month." (Dkt. 82 at 73-74.) The record evidence establishes that the individuals in Plaintiff's chain of command for the suspension and demotion decisions each conducted an independent review before concurring with Defendant Schierbaum's disciplinary recommendations.[4] The R&R noted these facts in its

---

[3] The R&R determined – three times – that Plaintiff's February 23, 2019, email did not constitute protected activity, (Dkt. 82 at 65, 68, 69), but still relied on that email as a basis for forming protected activity on temporal proximity. *Infra* at Section II.A.3.c.

[4] Although Defendant Schierbaum is a well-respected and thoughtful leader, Deputy Chief Glazier, Assistant Chief Coyt, and Chief Shields each still independently reviewed the OPS investigation file related to the incident that led to Plaintiff's

background, but never included them as part of its causal connection analysis. (*Id.* at 20-21, 38-40.) These independent reviews, like the intervening events in *Cisero*, sever any causal connection between Defendant Schierbaum's alleged retaliatory animus[5] and Plaintiff's adverse actions. *See Quintana v. City of Key W., Fla.*, 2017 WL 9471845, at *3 (S.D. Fla. 2017) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)).

Second, the R&R overlooks this Court's finding in *Cisero* that "[i]n order to make out her *prima facie* case, [plaintiff] also had to show that the protected activity was the 'but-for cause' of her [adverse action]." *Cisero v. ADT LLC of Del.*, No.

---

demotion and individually determined that demotion was appropriate. (Dkt. 62-2 at ₱₱ 235, 247; Dkt. 62-15 at ₱ 7.) Similarly, Deputy Chief Glazier and Assistant Chief Coyt both independently reviewed the OPS investigation file related to the incident that led to Plaintiff's suspension and determined suspension was appropriate. (Dkt. 62-2 at ₱ 154.) Moreover, Deputy Chief Glazier even **withdrew** the NPAA that was initially issued related to the suspension and asked OPS to further investigate the incident after Plaintiff raised allegations regarding the Night Commander whom Plaintiff believed was responsible for ensuring all policies and procedures were followed with respect to the incident. (Dkt. 62-2 at ₱ 157.) OPS conducted the supplemental investigation but did not change its determination that Plaintiff violated work rules. (*Id.* at ₱₱ 158-160.) In a separate instance, Deputy Chief Glazier reduced Defendant Schierbaum's recommended one-day suspension for Plaintiff's misconduct in the unlawful arrest incident to a written reprimand. (Dkt. 82 at 24.) These facts demonstrate the independent reviews are not mere rubber stamps.

[5] Defendants continue to vigorously contest that Defendant Schierbaum, a highly respected, diverse leader, harbored any retaliatory animus. Even assuming such, *arguendo*, for summary judgment purposes, his role in the ultimate decision to suspend and demote Plaintiff is irrelevant where other later independent reviews led to independent, final decisions by others.

1:19-cv-04319-SDG-CMS, 2021 WL 4472977, at *2 (N.D. Ga. Sept. 30, 2021)

(citing *Jerberee Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018);

*see also supra* at Section II.A.1.

Third and finally, the R&R distinguishes *Cisero* by stating that "Defendants

have not identified any performance or conduct problems that Plaintiff engaged in

***after*** the Georgia Tech incident and have not identified other employees with similar

performance problems that were demoted." (Dkt. 82 at 72.) But Defendants

identified sergeants who received greater discipline than Plaintiff for less severe

misconduct. *Supra* at Section II.A.3.a. And, the R&R overlooks the significance of

Defendants' investigatory and disciplinary process occurring ***after*** Plaintiff

complained to OPS about discrimination.[6] OPS's determination that Plaintiff

violated work rules ***after*** he complained of discrimination is tantamount to "ongoing

performance and conduct issues . . . that severed any possible inference of causation

---

[6] The City's investigatory process involves three separate individuals within OPS – an OPS investigator who conducts the fact-finding portion of the investigation, an OPS Lieutenant who reviews the factual investigation and determines if violations of employee work rules or City ordinances occurred, and the OPS Major who reviews all OPS investigations to ensure the conclusions reached are correct. (Dkt. 62-2 at ¶¶ 28, 32, 34.) No conclusion is reached regarding whether an employee engaged in alleged misconduct until OPS investigates the alleged misconduct and determines if violations of employee work rules or City ordinances occurred. (*Id.* at ¶¶ 35-36.) Only after OPS determines whether a violation occurred are several individuals in an employee's chain of command asked to provide a disciplinary recommendation after a de novo review of the file. (*Id.* at ¶ 35.)

between [the] [p]laintiff's complaints and issuance of . . . discipline" in *Cisero*. 2021 WL 1712206, at *14 (N.D. Ga. Apr. 27, 2021). To find otherwise risks creating precedent that would allow any employee to avoid responsibility for misconduct by merely alleging discrimination before a discipline decision occurs. But if the Court does not find *Cisero* applies to determinations arising from disciplinary investigations concluding ***after*** the protected activity, those investigations should still break the temporal proximity necessary for a causal connection where Plaintiff engaged in questionable behavior and then complained about discrimination ***before*** being disciplined. As the Eighth Circuit noted, "[t]he wisdom of this rule is evident in a case such as this, where the employee was accused of [misconduct] *before* she notified the employer of her protected activity. [Culpable] employees may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action." *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) (citing *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 834 (8th Cir. 2002) (finding "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity").

### c.     The R&R misconstrues the temporal proximity issue.

The R&R contends, "Defendants do not challenge Plaintiff's assertion that the

relevant dates for determining temporal proximity are Plaintiff's formal OPS complaint on April 24, 2019, on the one hand, and Defendant Schierbaum's recommendations for Plaintiff's suspension and demotion, on the other." (Dkt. 82 at 74, n. 49 (citations omitted).) The R&R overlooks information in Defendants' briefs and supporting materials that establishes Defendant Schierbaum was not the decisionmaker for either instance of misconduct that led to Plaintiff's suspension and demotion. (Dkt. 62-1 at 14-15, 17, 32-33; Dkt. 62-2 at ¶¶ 152-165, 233, 236-254.) While Defendant Schierbaum recommended discipline, Assistant Chief Coyt determined (after an independent review) that Plaintiff's actions warranted discipline for the shooting incident leading to his suspension, (Dkt. 62-2 at ¶¶ 154-155, 159-160), and Chief Shields determined (after an independent review) that Plaintiff's actions warranted discipline for the kidnapping incident leading to his demotion, (*id.* at ¶¶ 246-249, 251). And for both incidents, the CSB made the final decision based on its de novo review. (*Id.* at ¶¶ 162-165, 253-254.) Under these circumstances, Defendant Schierbaum's recommendations are irrelevant. The R&R omits these undisputed facts from its analysis and treats Defendant Schierbaum's recommendation as an adverse action for determining temporal proximity even though the R&R's cited authorities require the proximity analysis be based on the time between the <u>protected activity</u> and the <u>actual adverse action</u>. But here, any

temporal proximity is lacking for three reasons.

First, the record lacks evidence Assistant Chief Coyt knew Plaintiff complained of discrimination or filed an EEOC Charge. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020) (affirming summary judgment in retaliation case because plaintiff could not "show a relationship between her firing and [] protected activity" when she "did not offer any evidence that [decisionmaker] knew she had complained about . . . discrimination").

Second, Chief Shields did not make the decision to demote Plaintiff until almost six months after he complained to OPS about discrimination (which Chief Shields knew, although she did not know Plaintiff filed an EEOC Charge). (Dkt. 76-1 at 140:1-3.) The six-month gap is too lengthy to constitute the type of temporal proximity required to establish a causal connection between Plaintiff's protected activity and Chief Shields' decision to demote him for violating work rules. *Baroudi v. Sec'y, U.S. Dep't of Veterans Affs.*, 616 F. App'x 899, 902 (11th Cir. 2015) (finding that "a delay of three to four months is too long, as a matter of law, to establish causation by temporal proximity").

Third, the R&R relies on an irrelevant period between the email and the OPS investigation in its causal connection analysis. In doing so, after concluding the email did not constitute protected activity, the R&R still determined that Plaintiff's

February 2019 email, and the opening of an OPS investigation two days later "provides insight into Defendants' motives," and "helps establish not merely a prima facie case but also pretext." (Dkt. 82 at 63-69, 90-91, n. 55.) But merely opening an investigation into allegations of misconduct is not an adverse action because OPS investigations do not always end in discipline. (Dkt. 62-2 at ¶ 35.) Thus, the period between the email and the OPS investigation is not proper circumstantial evidence of a causal connection between protected activity and a true adverse action.[7]

### d. The R&R seemingly misconstrues the cat's paw theory.

While mentioning Plaintiff's cat's paw argument[8] once in passing, (Dkt. 82 at 54), the R&R seemingly applied that analysis given its focus on Defendant Schierbaum's disciplinary recommendations, and his influence on the disciplinary process, (*id.* at 74, 78-80). But here, cat's paw should not apply given the

---

[7] The R&R's reliance on *Turlington v. Atlanta Gas Light, Co.*, 135 F.3d 1428, 1436 (11th Cir. 1998), (Dkt. 82 at 91, n. 55), does not support the R&R's use of a non-protected activity to infer temporal proximity. In *Turlington,* the court analyzed whether a plaintiff could use a time-barred discriminatory act in a case involving discrimination, not retaliation. Here, the parties dispute whether the February 2019 email constituted protected activity, and the R&R correctly concluded it did not.

[8] The cat's paw theory of liability provides a way to establish causation "if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating," making the decisionmaker "a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson,* 186 F.3d at 1332.

independent reviews, *supra* at Section II.A.3.b, represent intervening events that prohibit a finding that the ultimate decisionmakers were mere conduits. Even if the R&R determined that Defendant Schierbaum somehow influenced Deputy Chief Glazier and Assistant Chief Coyt on the suspension decision, <u>and</u> Deputy Chief Glazier, Assistant Chief Coyt, and Chief Shields on the demotion decision,[9] the CSB also upheld both disciplinary decisions. (Dkt. 62-2 at ₱₱ 165, 254.) Any suggestion that the CSB could have been influenced by Defendant Schierbaum's alleged retaliatory animus is belied by the lack of record evidence. Thus, any reliance on a cat's paw to establish a prima facie case of retaliation is misplaced.

### 4.    Defendants object to the R&R drawing unreasonable inferences.

The R&R found the existence of sufficient circumstantial evidence of a causal connection between the protected activity (OPS and EEOC complaints) and adverse actions (the suspension and demotion decisions) because,

> [h]ere, in addition to evidence of temporal proximity, Plaintiff has offered evidence tending to show that some of his supervisors thought he exceeded expectations; that Schierbaum did not initially fault Plaintiff for the Georgia Tech incident; that Chief Shields refused to meet with Plaintiff about alleged discrimination after saying she would; that after Plaintiff filed his formal OPS complaint, the intake officer and Defendant Schierbaum had a

---

[9] As the R&R notes, Plaintiff offers his mere belief that "white shirts rarely will go against each other" and "stick together." (Dkt. 82 at 48 (citation omitted).) But "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

> suspiciously timed phone call; that no comprehensive investigation into his OPS discrimination claims was conducted before the complaint was closed, despite Chief Shields's testimony that an investigation would be important; and that no other officers have been subject to the same discipline as Plaintiff in multiple decades.

(Dkt. 82 at 81.) Defendants object because these unreasonable inferences cannot establish a causal connection through circumstantial evidence.

The Eleventh Circuit has stated:

> Under federal law, an inference must be reasonable to defeat a motion for summary judgment. A reasonable inference is one that a reasonable and fair-minded person in the exercise of impartial judgment might draw from the evidence. Reasonable inferences may rest in part on conjecture, for an inference by definition is at least partially conjectural. But a jury cannot be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence.

*Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (citations and quotations omitted). The R&R's "circumstantial evidence" does not satisfy this standard.

The R&R's "circumstantial evidence" is based on unreasonable inferences. The causal connection analysis overlooks undisputed, material facts, *supra* at Section II.A.2; rests on a faulty temporal period, *supra* at Section II.A.3.c; does not apply but-for causation, *supra* at Section II.A.1; lacks proper comparator evidence, *supra* at Section II.A.3.a; and does not reconcile the impact of different

17

decisionmakers conducting independent investigations, *supra* at Section II.A.3.b. The R&R's inference "that Schierbaum did not initially fault Plaintiff for the Georgia Tech incident," (Dkt. 82 at 81), is contradicted by uncontroverted evidence in the R&R that: "[a]t the time, Schierbaum did not realize that GIS had been engaged with another matter, and thought they refused to respond, doing Plaintiff a 'disservice'; however, it later became clear to Schierbaum that that belief was 'premature[,]'" (*id.* at 27-28 (citations omitted)). These collective issues not only break any causal connection based on proximity drawn from ambiguous telephone calls and non-binding recommendations, but also reasonably demonstrate Plaintiff's discrimination complaints were pretextual attempts to influence the disciplinary process (leading to Chief Shields refusing to meet with him, (Dkt. 81 at 11-12; Dkt. 82 at 81), and the OPS quickly dismissing his complaint on its face, (Dkt. 81 at 13; Dkt. 82 at 93-94)). Absent these unreasonable inferences, the R&R is left with a causal connection based on the investigatory process not considering Plaintiff's reviews. Even if Plaintiff's supervisors believe he exceeded expectations generally, uncontroverted evidence shows he engaged in five separate instances of misconduct—for one of which Plaintiff concedes he dropped the ball—warranting discipline on four occasions. Thus, the R&R lacks proper circumstantial evidence to establish causal connection. *Berbridge*, 728 F. App'x at 932.

**B.**    **Defendants object to the R&R finding that Plaintiff established a jury question exists on the pretext element.**

In discussing pretext, the R&R concludes "there is little difference between the pretext analysis and the convincing mosaic analysis[,]" (Dkt. 82 at 83, n. 51), and thus considered them together. Defendants object to the R&R's reliance on the convincing mosaic theory. The Eleventh Circuit expressly noted that it has not decided if "retaliation claims can survive summary judgment under a convincing-mosaic theory." *James v. City of Montgomery*, 823 F. App'x 728, 735 (11th Cir. 2020). Regardless, the "convincing mosaic" standard is not used for the pretext analysis; rather, it is an alternative manner to show discriminatory intent in Title VII discrimination cases when a prima facie case does not exist because of a lack of a comparator. *See Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Moreover, for the same reasons articulated under the causation analysis, *supra* at Section II.A.4, Defendants object to the R&R relying on unreasonable inferences as part of its finding that a triable issue on pretext exists. (Dkt. 82 at 85-95.)

Finally, Defendants object to the R&R's pretext analysis because it largely relies on misplaced temporal proximity, *supra* at Section II.A.3.c, and quarrels with

Defendants' employment judgment.[10] *Morgan v. Orange Cnty., Fla.*, 477 F. App'x 625, 628 (11th Cir. 2012) (when "the proffered [legitimate non-retaliatory] reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." (citations and quotations omitted)).

### D.   CONCLUSION

For the foregoing reasons, Defendants respectfully object to the R&R's recommendation that the Court deny summary judgment on Plaintiff's retaliation claims and ask the Court to modify its final order on summary judgment to correct only the R&R's errors on the elements of causation and/or, if necessary, pretext.

On this 3rd day of January, 2023.        Respectfully submitted:

Thomas R. Bundy                          */s/ Katherine L. Kendricks*
(Admitted *pro hac vice*)                Allegra J. Lawrence (GA Bar No. 439797)
LAWRENCE & BUNDY LLC                     Katherine L. Kendricks (GA Bar No. 364012)
8115 Maple Lawn Boulevard                LAWRENCE & BUNDY LLC
Suite 275                                1180 West Peachtree Street, NW, Suite 1650
Fulton, MD 20789                         Atlanta, Georgia 30309
Telephone:  (240) 500-3595               Telephone:  (404) 400-3350
Facsimile:   (240) 657-1109              Facsimile:   (404) 609-2504
Thomas.Bundy@lawrencebundy.com           Allegra.Lawrence-Hardy@lawrencebundy.com
                                         Katherine.Kendricks@lawrencebundy.com
*Counsel for Defendants*

---

[10] Dkt. 82 at 87 (counseling), 87-88 (training, mentoring, early intervention program, or a performance improvement plan), and 95 (uncited "policies and practices calling for more lenient and remedial measures first").

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1(C)

I hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.), which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D). I hereby certify that on January 3, 2023, I electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO FINAL REPORT AND RECOMMENDATION** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

A. Lee Parks, Jr.
Georgia Bar No. 563750
Email: lparks@pcwlawfirm.com
J. Daniel Cole
Georgia Bar No. 450675
Email: dcole@pcwlawfirm.com
M. Travis Foust
Georgia Bar. No. 104996
Email: tfoust@pcwlawfirm.com

Parks, Chesin & Walbert, P.C.
75 14th Street, N.E.,
Suite 2600
Atlanta, Georgia 30309
T: (404) 873-8000
F: (404) 873-8050

*/s/ Katherine L. Kendricks*
Allegra J. Lawrence (GA Bar No. 439797)
Katherine L. Kendricks (GA Bar No. 364012)

LAWRENCE & BUNDY LLC
1180 West Peachtree Street, Suite 1650
Atlanta, Georgia 30309
Telephone:    (404) 400-3350
Facsimile:    (404) 609-2504
Allegra.Lawrence-Hardy@lawrencebundy.com
Katherine.Kendricks@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
LAWRENCE & BUNDY LLC
8115 Maple Lawn Boulevard
Suite 275
Fulton, MD 20789
Telephone:    (240) 500-3595
Facsimile:    (240) 657-1109
Thomas.Bundy@lawrencebundy.com

*Attorneys for Defendants*