UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COREY MOORE,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, GEORGIA and DARIN SCHIERBAUM,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:20-CV-3380-JPB-JKL |

# **ORDER**

This matter comes before the Court on the Magistrate Judge's Final Report and Recommendation (R. & R.) [Doc. 82].  This Court finds as follows:

## **BACKGROUND**

The R. & R. sets forth the facts of this case in considerable detail.  See [Doc. 82, pp. 4–51].  The Court incorporates those facts by reference here.  In short, this is an employment action in which Plaintiff, an officer with the Atlanta Police Department, alleges that Defendants, his employer and immediate supervisor, discriminated against him on the basis of his race and retaliated against him for filing a formal complaint of race discrimination.

On August 14, 2020, Corey Moore ("Plaintiff") filed this action against his employer, City of Atlanta, Georgia, ("Atlanta") and his supervisor, Major Darin

Schierbaum of the Atlanta Police Department ("Schierbaum") (collectively, "Defendants"). [Doc. 1]. In his Complaint, Plaintiff brings race discrimination claims against both defendants under 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and a race discrimination claim under Title VII of the Civil Rights Act against Defendant Atlanta only. Id. The Complaint also brings retaliation claims under §§ 1981 and 1983 against both defendants and a retaliation claim under Title VII against Defendant Atlanta only. Id. Plaintiff requests several remedies from the Court in his Complaint, including reinstatement to his former position, compensatory damages and, against Defendant Schierbaum in particular, punitive damages. Id.

Defendants filed a Motion for Summary Judgment on August 15, 2022. [Doc. 62]. On December 19, 2022, Magistrate Judge John Larkins III issued an R. & R. in which he recommended granting in part and denying in part Defendants' Motion for Summary Judgment. [Doc. 82]. The Magistrate Judge determined that Plaintiff abandoned his race discrimination claims by failing to lodge any opposition or otherwise argue that summary judgment is not appropriate. Id. at 56–57. With respect to Plaintiff's retaliation claims, the Magistrate Judge determined that Plaintiff also failed to respond to Defendants' arguments that the

only adverse employment actions Plaintiff suffered were his suspension and demotion, and that Plaintiff failed to set forth any evidence warranting the imposition of punitive damages against Defendant Schierbaum. Id. at 57. Therefore, the Magistrate Judge recommended that summary judgment be granted as to all of Plaintiff's race discrimination claims and his retaliation claims to the extent they are not premised upon his suspension or demotion, or to the extent that they seek punitive damages from Defendant Schierbaum. Id. at 100. The Magistrate Judge recommended that summary judgment be denied as to Plaintiff's retaliation claims against Defendant Atlanta under Title VII and against Defendant Schierbaum under § 1981 as they pertain to Plaintiff's suspension and demotion. Id.

Defendants filed Objections to the R. & R. on January 3, 2023, and Plaintiff responded to Defendants' Objections on January 17, 2023. [Doc. 84]; [Doc. 85]. In the Objections, Defendants contend that the Magistrate Judge erred in recommending denial of summary judgment as to Plaintiff's suspension and demotion retaliation claims. [Doc. 84, p. 2]. Specifically, Defendants object to the R. & R.'s findings that (1) Plaintiff satisfied the causation element to establish a prima facie case of retaliation, and (2) a jury question exists on pretext. Id. This Court addresses each argument in turn.

## ANALYSIS

A.	**Legal Standard**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R. & R. that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard. Notably, a party objecting to a recommendation "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'" United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

Defendants object to the portions of the R. & R. recommending denial of summary judgment on Plaintiff's retaliation claims. Upon review of the R. & R., the Court finds no clear error as to the non-objected-to portions and it therefore **ADOPTS** the R. & R. with respect to its recommendation that summary judgment

4

be entered in Defendants' favor on those claims. The Court next analyzes the portions of the R. & R. that Defendants object to.

**B.     Defendants' Objections**

Defendants lodge several objections to the R. & R.'s findings on Plaintiff's Title VII and § 1981 retaliation claims. The Court begins its analysis with the requirements for proving a retaliation claim.

A plaintiff alleging retaliation must first establish a prima facie case. Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009). To establish a prima facie case of retaliation under Title VII or § 1981, a plaintiff must show that (1) "he engaged in statutorily protected activity," (2) "he suffered a materially adverse action" and (3) "there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). To show a causal relation at the prima facie stage of a summary judgment analysis, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. at 1278 (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)). See also Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1135 n. 13 (11th Cir. 2020). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper

Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). However, "mere temporal proximity, without more, must be 'very close.'" Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). Where the allegedly protected activity and the adverse employment action are not "very close," a plaintiff can nevertheless establish a causal connection through "other evidence tending to show causation." Ramirez v. Bausch & Lomb, Inc., 546 F. App'x 829, 832 (11th Cir. 2013).

After the prima facie case is established, it creates a "presumption that the adverse action was the product of an intent to retaliate." Gogel, 967 F.3d at 1135 (quoting Bryant, 575 F.3d at 1308). The employer must then rebut the presumption by articulating a legitimate, non-retaliatory reason for the adverse employment action. Id. If the employer successfully rebuts the presumption of retaliation, the plaintiff must then demonstrate that the employer's proffered reason behind the adverse employment action was merely a pretext to mask retaliatory actions. Id.

The Court addresses Defendants' objections as to prima facie causation and pretext as follows.

1. *Causation*

Because Title VII and § 1981 retaliation claims have the same requirements for establishing a prima facie case of retaliation, the R. & R. addressed those claims together and concluded that Plaintiff satisfied the requisite elements. As described above, the first two elements of a prima facie case of retaliation are protected activity and adverse employment action. The parties agree that Plaintiff's filing of a formal complaint of discrimination on April 24, 2019, was protected activity. However, the parties disagree about whether the adverse employment action in this case should be identified as Defendant Schiebaum's recommendation to demote Plaintiff on May 14, 2019, or Plaintiff's subsequent demotion effective October 21, 2019.

Nevertheless, Defendants do not object to the R. & R.'s conclusion that the first two elements are satisfied. Rather, Defendants object to the findings on the causation element for establishing the prima facie case. Defendants argue that the R. & R. improperly failed to apply a "but-for" standard and misconstrued legal theories for establishing causation. Further, Defendants contend that the R. & R. incorrectly interpreted relevant case law, omitted material facts and drew unreasonable inferences.

### a. Prima Facie Retaliation Causation Standard

The Court begins by addressing Defendants' objection as to the proper causation standard to apply at the prima facie stage of a summary judgment analysis. Defendants argue that the Magistrate Judge erred by failing to apply the heightened "but-for" causation standard that the United States Supreme Court applied in University of Texas Southwestern Medical Center v. Nassar. 570 U.S. 338 (2013). Under the "but-for" standard, Plaintiff would need to prove that had he not complained, he would not have been demoted. See Gogel, 967 F.3d at 1135. In contrast, under the traditional causation standard that the Magistrate Judge applied, Plaintiff would only need to show that his discrimination complaint and his subsequent demotion were not "wholly unrelated." Id.

Defendants' suggested application of the "but-for" standard at the prima facie stage of a summary judgment analysis contradicts authority from the United States Court of Appeals for the Eleventh Circuit. See id. In Gogel, a former employee brought retaliation claims against her employer under Title VII and § 1981. Id. In its summary judgment analysis, the Eleventh Circuit made it clear that the "but-for" standard established in Nassar is applied at the *pretext* stage of a summary judgment analysis. Id. at 1135 n.13. On the other hand, the traditional causation standard is applied at the *prima facie* stage of the analysis. Id.; see also

Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1294 (11th Cir. 2021) (noting that the traditional causation standard is applied at the prima facie stage of a summary judgment analysis and the "but-for" standard is applied at the pretext stage). Therefore, Defendants' objection to the Magistrate Judge's application of the traditional standard for causation at the prima facie stage of the analysis lacks merit.

### b. Comparator Requirement

Defendants next contend that, to satisfy the causation requirement of a prima facie retaliation case, Plaintiff is required to provide a comparator and demonstrate that the comparator is similarly situated in all relevant respects. However, unlike race discrimination claims, there is no comparator requirement for a prima facie showing of retaliation. Palermo v. Grunau Co., Inc., 220 F.Supp.3d 1300, 1310 (M.D. Fla. 2016). As previously noted, Defendants object to the R. & R.'s findings on the retaliation claims, not the findings on Plaintiff's race discrimination claims. Therefore, Defendants' objection based on the lack of a proper comparator are unfounded.

### c. Temporal Proximity and Cat's Paw

Defendants additionally object to the R. & R. on the basis that the Magistrate Judge misconstrued the temporal proximity issue and the "cat's paw" theory of

establishing causation. As noted above, one way to establish a causal connection for a prima facie case of retaliation is by showing a close temporal proximity between the protected activity and the adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

As part of the Court's analysis of whether there is a close temporal proximity in this case, the Court must determine when the adverse action occurred. The parties disagree as to whether the adverse action occurred on May 14, 2019, the date that Defendant Schierbaum submitted his recommendation that Plaintiff be demoted, or on October 21, 2019, the date that Plaintiff's subsequent demotion took effect. If Defendant Schierbaum's recommendation is identified as the adverse action, the twenty-day proximity to Plaintiff's discrimination complaint would likely support a finding of a close temporal proximity. On the other hand, if the date of the demotion is the adverse action, the approximate six-month gap would be too long to establish a causal link by temporal proximity. See id. at 1364 (noting that a three- to four-month delay between the protected activity and the adverse action is not enough to establish causation alone).

Where, as here, a plaintiff alleges that the adverse action is a supervisor's biased recommendation to a decisionmaker to take adverse action against the plaintiff, the "cat's paw" theory of liability is implicated. The "cat's paw" theory

10

applies when a biased actor recommends that an adverse employment action be taken against an employee, but the biased actor is not the ultimate decisionmaker. Williamson v. Adventist Health Sys./Sunbelt, Inc., 372 Fed. App'x 936, 938 (11th Cir. 2010). In such a scenario where the decisionmaker follows the biased recommendation without an independent investigation, "the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's [retaliatory] animus." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999).

Here, the relevant portions of the record reflect that on April 24, 2019, Plaintiff filed a formal complaint of race discrimination against Defendant Schierbaum. Approximately five days later, Defendant Schierbaum was asked to review the investigative file for an unrelated incident investigation pending against Plaintiff and provide his disciplinary recommendation. Defendant Schierbaum was not the ultimate disciplinary authority for the pending investigation against Plaintiff. However, approximately twenty days after Plaintiff's discrimination complaint, Defendant Schierbaum submitted his recommendation that Plaintiff be demoted. It is undisputed that Defendant Schierbaum was aware of Plaintiff's discrimination complaint at the time that he submitted his recommendation. Defendant Schierbaum also admits to meeting with one of the deputy chiefs who

was involved in the pending incident investigation against Plaintiff to discuss his concerns.

Defendants contend that because the ultimate disciplinary decisionmaker conducted her own review of the incident investigation before deciding to demote Plaintiff, the causal link was broken.  Although Defendants are correct that an independent investigation may break the causal link under the "cat's paw" theory, see Stimpson, 186 F.3d at 1332, the record indicates that the decisionmaker in this case sought out Defendant Schierbaum's opinion.  Further, during the investigative review, Defendant Schierbaum met with one of the chiefs who was handling Plaintiff's incident investigation to discuss his concerns.  Resolving all doubts in Plaintiff's favor, the Court finds that a fair-minded jury could conclude that Defendant Schierbaum influenced the ultimate decision to demote Plaintiff.  See Austin v. Mac-Lean Fogg Co., 999 F. Supp. 2d 1254, 1261–62 (N.D. Ala. 2014) (finding that the record contained sufficient evidence to support a finding of liability under the "cat's paw" theory where the decisionmaker sought out the biased actor's opinions on the adverse employment action).  Therefore, the Court agrees with the R. & R.'s finding that Defendant Schierbaum's recommendation of demotion was the adverse action, and that temporal proximity has been established by the twenty-day proximity.

Even assuming that a "very close" temporal proximity was not established, however, the R. & R. did not rely solely on the close temporal proximity in reaching its conclusion on prima facie causation. To the contrary, the R. & R. alternatively relied on several pieces of evidence that "broadly support[ted] the notion that Plaintiff's protected activity was connected to his suspension and demotion," including Plaintiff's evidence that tended to show:

> that some of his supervisors thought he exceeded expectations; that Schierbaum did not initially fault Plaintiff for the [unrelated] incident; that Chief Shields refused to meet with Plaintiff about alleged discrimination after saying she would; that after Plaintiff filed his formal [discrimination] complaint, the intake officer and Defendant Schierbaum had a suspiciously timed phone call; that no comprehensive investigation into his [discrimination complaint] was conducted before the complaint was closed, despite Chief Shields's testimony that an investigation would be important; and that no other officers have been subject to the same discipline as Plaintiff in multiple decades.

The Court agrees that these pieces of evidence tend to demonstrate that Plaintiff's formal discrimination complaint and his subsequent demotion are not "wholly unrelated." Accordingly, Defendants' objections to the Magistrate Judge's application of temporal proximity and the "cat's paw" theory of establishing causation fail.

### d. Remaining Causation Objections

Defendants' remaining objections to the R. & R.'s prima facie causation findings are conclusive and lack any legal basis.  By way of example, Defendants argue that the Magistrate Judge improperly distinguished the case <u>Cisero v. ADT LLC of Delaware</u>, No. 1:19-CV-4319, 2021 WL 4472977 (N.D. Ga. Apr. 27, 2021).  Upon review of the <u>Cisero</u> case, the Court agrees with the Magistrate Judge's interpretation that its conclusion on causation was based on the plaintiff's ongoing behavior and performance issues that were present both before and after the protected activity.  <u>Id.</u> at 2.  The Court further agrees with the R. & R.'s finding that <u>Cisero</u> is distinguishable, as here Defendants have not identified any performance or conduct problems by Plaintiff *after* he filed the formal discrimination complaint.

Defendants next argue that the Magistrate Judge omitted material facts from the R. & R. and drew improper inferences.  Defendants specifically object to the omission of facts that Defendants contend show that Plaintiff complained about discrimination because he wanted to influence the pending incident investigation against him.  [Doc. 84, pp. 6–7].  According to Defendants, had these facts been analyzed with the entire record, but "under the lends of but-for causation, a fair-minded jury could not credibly find a causal connection of retaliation." <u>Id.</u> at 7.

14

The Court does not agree.  First, as previously determined, the "but-for" standard is not applied at the prima facie stage.  Additionally, Defendants provide no legal basis or applicable authority to support the theory that Plaintiff's knowledge of the pending incident investigation at the time that he filed his discrimination complaint negates a causal link between Plaintiff's complaint and his subsequent demotion.  Further, with respect to the inferences drawn in the R. & R., it is well-established that at summary judgment, the court draws all inferences in the light most favorable to the non-moving party.  Smith v. Owens, 848 F.3d 975, 978 (11th Cir. 2017).  Under that standard, the Court does not find that the Magistrate Judge drew any improper inferences.  Upon review of the R. & R.'s examination of the record and application of the evidence under the summary judgment standard, the Court finds no reason to reject the Magistrate Judge's findings on these bases.

Accordingly, the Court finds that the Magistrate Judge correctly concluded that Plaintiff established causation with respect to his prima facie case of retaliation, and therefore, Defendants' objections to the R. & R. on this finding are **OVERRULED**.

## 2. *Pretext*

As previously noted, after the prima facie case is established, it creates a rebuttable presumption of retaliation. Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1135 n. 13 (11th Cir. 2020) (quoting Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009)). The burden then shifts to the employer to rebut the presumption by articulating a proffered non-retaliatory reason for the adverse employment action. Id. If the employer successfully rebuts the presumption of retaliation, the plaintiff must then demonstrate that the employer's proffered reason behind the adverse employment action was merely a pretext to mask retaliatory actions. Id.

To withstand a motion for summary judgment, a plaintiff "'must introduce significantly probative evidence'" to demonstrate pretext. Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993)). "A reason is not pretext for [retaliation] 'unless it is shown both that the reason was false, *and* that [retaliation] was the real reason.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). When assessing whether a plaintiff has established pretext, a court's task is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)). A plaintiff must meet the proffered reason head on and rebut it, and a plaintiff may not establish pretext by merely quarreling with the wisdom of the employer's reason. Id. at 1543.

Here, Defendants' proffered non-retaliatory reason for suspending and demoting Plaintiff was due to Plaintiff's extensive misconduct and poor performance. The Magistrate Judge concluded that Defendants' reasons for suspending and demoting Plaintiff sufficed, and the burden thus shifted back to Plaintiff to show that Defendants' proffered reasons were mere pretext for retaliation. After a thorough examination of the record, the Magistrate Judge found that Plaintiff established pretext.

Defendants argue that the Magistrate Judge applied the incorrect pretext standard and relied on reasoning that quarrels with Defendants' employment judgment. In analyzing pretext, Defendants contend that the Magistrate Judge incorrectly relied on the "convincing mosaic" standard instead of the traditional pretext standard described above. Unlike the traditional pretext standard under which the court evaluates whether a plaintiff has demonstrated weaknesses,

implausibilities, inconsistencies, incoherencies or contradictions in the defendant's proffered reasons for adverse action, the "convincing mosaic" theory is an alternative way that a plaintiff can establish discriminatory intent through circumstantial evidence that would allow a jury to infer intentional discrimination. Lewis v. City of Union City, Georgia, 934 F.3d 1169, 1185 (11th Cir. 2019). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." Id.

In a footnote, the Magistrate Judge noted that because Plaintiff established a prima facie case of retaliation, there is little difference between the traditional pretext analysis and the "convincing mosaic" analysis. The Magistrate Judge reasoned that much of the same evidence that supported the prima facie case also applied to the pretext analysis and therefore, the Magistrate Judge applied the evidence to both standards. Because the outcome of the pretext analysis would remain unchanged, the Court declines to evaluate whether applying the "convincing mosaic" analysis or the traditional analysis was appropriate. The Magistrate Judge provided a thorough analysis of the evidence supporting a finding

of pretext.  The Court will not re-examine each piece of supporting evidence, however, the Court finds particularly significant the portions of the record that show that before Plaintiff's demotion, he received praise and positive feedback from his immediate supervisors and was rated overall as "exceeding expectations" in his performance reviews.  See Patterson v. Georgia Pacific, LLC, 38 F.4th 1336, 1354 (11th Cir. 2022) (finding that evidence of positive work performance reviews contributed to the creation of a genuine issue of material fact on pretext where the employer's reason for termination was poor work performance).  Overall, the Court agrees that the record supports a finding of pretext regardless of which standard is applied and that the evidence goes beyond mere quarrelling with Defendants' judgment.  The Court finds no reason to reject the R. & R.'s pretext finding on these grounds.

Defendants further contend that the R. & R. relied on unreasonable inferences misplaced temporal proximity.  Because the Court has already examined Defendants' arguments as to unreasonable inferences and temporal proximity, the Court will not re-examine those arguments.

Therefore, Defendants' objections to the R. & R.'s findings on pretext are **OVERRULED**.

## CONCLUSION

Based on the foregoing analysis, Defendants' Objections [Doc. 84] are **OVERRULED**.  The R. & R. [Doc. 82] is **ADOPTED** as the order of this Court.  For the reasons stated by the Magistrate Judge and this Court, Defendants' Motion for Summary Judgment [Doc. 62] is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is **GRANTED** as to all of Plaintiff's race discrimination claims, Plaintiff's retaliation claims against Defendant Atlanta under §§ 1981 and 1983 and Plaintiff's request for punitive damages against Defendant Schierbaum.  Summary judgment is **DENIED** as to Plaintiff's retaliation claims against the City under Title VII and against Defendant Schierbaum under § 1981, as they pertain specifically to Plaintiff's suspension and demotion.

**SO ORDERED** this 27th day of March, 2023.

J. P. BOULEE
United States District Judge